UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| CARLOS ALMODOVAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00166-LEW |
| | ) | |
| ROBERT WILKIE, SECRETARY, | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S MOTION TO AMEND, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

In this order, the Court reviews three pending motions: Plaintiff's Motion to Amend Complaint (ECF No. 66), Plaintiff's Cross Motion for Summary Judgment (ECF No. 52); and Defendant's Motion for Summary Judgment (ECF No. 44). For reasons that follow, Plaintiff's Motion to Amend Complaint is DENIED; Plaintiff's Cross Motion for Summary Judgment is DENIED; and Defendant's Motion for Summary Judgment is GRANTED.

## I. PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff filed his Motion to Amend Complaint on October 7, 2020. Plaintiff alleges that "allowing [him] to amend his complaint will provide a more detailed statement of the issues, serve justice, and promote judicial efficiency." Motion at 2. Plaintiff further notes that motions to amend should be freely granted pursuant to the liberal standard of Federal Rule of Civil Procedure 15(a).

Plaintiff is correct that the standard under Fed. R. Civ. P. 15(a)(2) is a liberal one. However, Rule 15(a)(2) comes with a shot clock. Once the scheduling order's deadline for amendment of the pleadings expires, "Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely given' standard, governs." *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 327 (1st Cir. 2008) (citing *O'Connell v. Hyatt Hotels*, 357 F.3d 152, 154-55 (1st Cir. 2004)). The more demanding "good cause" standard "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). And once an opposing party has filed a timely motion for summary judgment, "a plaintiff is required to show 'substantial and convincing evidence' to justify a belated attempt to amend a complaint." *Id.* (citation omitted). "In the decision calculus, the moving party's diligence or lack of diligence serves as the 'dominant criterion.'" *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019). A lengthy delay can, in and of itself, be grounds for a court to deny a motion to amend the complaint. *Id.* (citing *Stier*, 383 F.3d at 12).

In its June 6, 2019 Scheduling Order (ECF No. 22), the Court set discovery to close on October 23, 2019. It also instructed the parties to file a notice of their intent to file any motions for summary judgment by October 30, 2019. Defendant did so on September 10, 2019 (ECF No. 23). Plaintiff, however, never filed any such notice. On October 24, 2019, the Court granted an unopposed Motion for Expansion of Time to Complete Discovery which extended the discovery deadline to December 23, 2019. (ECF No. 25). The parties thereafter settled on Summary Judgment Briefing Deadlines (ECF No. 36) which specified

Defendant's Motion for Summary Judgment must be filed by June 1, 2020, with Plaintiff's Response due July 13, 2020. Defendant's Reply was due by July 27, 2020.

It is quite a peculiar situation when a party participates in setting deadlines for summary judgment filings, litigates against the opposing party's motion for summary judgment, files his own motion for summary judgment without having given notice of the intent to do so, files an amended motion for summary judgment, and then files an eleventh-hour motion to amend the very complaint the parties have zealously argued over for months.

Plaintiff requests leave to amend his complaint to add one claim involving allegedly withheld evidence. Plaintiff, however, admits receiving the document in question on January 4, 2020. Proposed Am. Cmpl. ¶ 37. While parties are not expected to file a motion to amend their complaint immediately upon receipt of new evidence of this kind, they are required to be diligent. *Stier*, 383 F.3d at 12. Not only did Plaintiff wait ten months to request leave to amend, he waited until the parties were deep into the summary judgment briefing cycle. Plaintiff provides the Court with no cause, let alone good cause, why such a reluctant amendment should be allowed. Given Plaintiff's lack of diligence and the absence of a showing of good cause, Plaintiff's Motion to Amend (ECF No. 66) is denied.

## II.    PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

Serious procedural deficiencies call for the summary denial of Plaintiff's Cross Motion for Summary Judgment (ECF No. 55). To begin, Plaintiff never filed a notice of his intent to pursue summary judgment, in violation of both the Scheduling Order and Local Rule 56(h). Additionally, "[b]y rule, a party seeking summary judgment must file, in

addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement." *Auritt v. Auritt*, No. 2:18-cv-00471-DBH, 2020 U.S. Dist. LEXIS 71886, at *2-3 (D. Me. April 23, 2020) (citing D. Me. Local R. 56(b)). This is more than procedural etiquette; noncompliance is fatal to a movant's request for summary judgment. *Id.* at 3. Absent a statement of material facts, the responding party is unable to file an opposing statement of material facts, and consequently the Court is deprived of the raw materials to determine the existence of disputed material facts.  And the last step is the sine qua non of a Rule 56 exercise.

Here, Plaintiff filed two motions for summary judgment (ECF No. 52, 55) but failed to comply with the Federal Rules of Civil Procedure and the District of Maine Local Rules each time. The Plaintiff's errors leave the current state of the would-be summary judgment record unsuitable for judicial review. Furthermore, Plaintiff's assertion that he is entitled to judgment in his favor appears to be based on the contention that Defendant misapplied veteran preferences when selecting interviewees, but there is no claim of that kind in Plaintiff's complaint and the process of selection resulted in Plaintiff receiving an interview. The Plaintiff's Cross Motion for Summary Judgment (ECF No. 55) is DENIED.

## III.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant filed his Motion for Summary Judgment (ECF No. 44) on June 1, 2020. In his motion, Defendant argues that the Plaintiff's complaint should be dismissed in its entirety because Plaintiff failed to exhaust certain claims through administrative proceedings and because Plaintiff cannot produce any evidence that the VA discriminated

4

against him on the basis of his protected activity, his gender, his disability, or his national origin or race, or that he was subjected to severe or pervasive hostile conduct in his work environment.

### A. SUMMARY JUDGMENT FACTS

The summary judgment facts are drawn from the parties' stipulations, if any, and each party's statements of material facts, assuming the statements are submitted in accordance with Local Rule 56.  Facts contained in a supporting or opposing statement of material facts that are not properly controverted by the opposing party are deemed admitted and adopted.  D. Me. Local R. 56(f).  If a party's statement is denied or qualified by the opposing party, or if an evidentiary objection is raised concerning the record evidence cited in support of a statement, the Court will review those portions of the summary judgment record cited by the parties, and will accept, for summary judgment purposes, the factual assertion that is most favorable to the non-moving party, provided that the record material cited in support of the assertion is of evidentiary quality and is capable of supporting the non-moving party's assertion, either directly or through reasonable inference.  D. Me. Loc. R. 56; *Boudreau v. Lussier*, 901 F.3d 65, 69 (1st Cir. 2018).

Here, we have the unusual scenario in which the non-moving party has failed, in all meaningful respects, to controvert—or even respond to—the movant's statement of material facts.  Accordingly, I will accept each of the Defendant's statements as true and admitted so long as they are properly supported by record evidence. D. Me. Local R. 56(f).

Carlos Almodovar ("Plaintiff") is a male of Puerto Rican descent with physical disabilities.  Since March 2008, Plaintiff has worked as a Diagnostic Radiologic

Technologist within the Maine Healthcare System of the U.S. Department of Veterans Affairs ("VA"). From that time through early 2014, Plaintiff worked in the Radiology Service of the Togus VAMC, in Augusta, Maine.  Through 2013, Dr. David Gideon was the Chief of the Togus VAMC Radiology Service.  At some point in 2013, Dr. Luiz Gonzalez assumed Dr. Gideon's duties and became Plaintiff's supervisor until he retired from federal service in mid-2016.  Kimberly Metcalf, the Radiology Manager at the Togus VAMC, also supervised Plaintiff from April, 2012 until she retired from federal service in September 2015.[1]

On February 11, 2014, Plaintiff transferred to a VA community-based outpatient clinic in Lewiston, Maine (the "Lewiston CBOC"), where he has worked continuously as the only Radiologic Technician.  By his own admission, Plaintiff has not experienced discrimination at the Lewiston CBOC and has enjoyed working there.  Since his transfer to the Lewiston CBOC, Plaintiff has not worked at the Togus VAMC and has only been present at the facility to receive medical care, interview for open job postings, and attend various trainings.  After his transfer, despite technically remaining under the management of the Togus VAMC Radiology Service, Plaintiff had minimal interactions with his supervisors at the Togus VAMC, who "basically le[ft] [him] alone."."  Further, from at least 2015 through February 2016, Plaintiff admits that no one at the VA harassed, insulted, or ridiculed him.  During this time, the only instance Mr. Almodovar cites as even a

---

[1] Although Ms. Metcalf retired from her Radiology Manager position, she continued working for the VA through April 2016 on a contract basis to provide administrative support in a non-supervisory role.

"minimal type of hostile" work environment is the non-selection for a Supervisory Diagnostic Radiologic Technologist ("SDRT") position.

Plaintiff does not suffer from any emotional, psychiatric, or mental health conditions, and, other than seeing an Employee Assistance Program counselor for five days in 2013, has never sought emotional, psychiatric, or mental health support in connection with the conditions of his employment.  He has not felt physically threatened at work, although there was one co-worker he considered a bully who was reassigned in 2012 or earlier.  Plaintiff has not been absent from or looked for reasons not to attend work due to the alleged hostile work environment.  Plaintiff was absent several times over the years for various physical ailments.  Plaintiff succeeded in his professional duties and did his job well.  In fact, Plaintiff's annual performance reviews from 2013 through 2016 were overall "outstanding."

On April 9, 2013, Plaintiff expressed interest to Ms. Metcalf about participating in a potential MRI training opportunity at the Togus VAMC.  By April 19, 2013, Plaintiff learned he was not selected for the MRI training.  Although Plaintiff consulted with his employee union, he did not file an EEO complaint regarding his non-selection.  Later in 2013, Plaintiff applied and was not selected for the position of Lead Diagnostic Radiologic Technologist at the Togus VAMC.  After learning in October 2013 that he was not selected, he did not raise the non-selection with an EEO counselor to pursue an EEO complaint.

In 2015, Plaintiff applied for an open Supervisory Diagnostic Radiologic Technologist ("SDRT") at the Togus VAMC.  Plaintiff was one of thirty-one applicants

and one of three people selected for an interview.  After the interview process, Plaintiff was not selected for the position.  He timely filed an EEO complaint in early 2016.

Sometime in 2018 or 2019, Plaintiff sought and did not receive retraining in CAT scans but did not raise the denial with an EEO counselor.  In addition, Plaintiff was denied the ability to complete the final executive-level of the VA's Leadership, Effectiveness, Accountability and Development Program and did not raise the denial with an EEO counselor.

Plaintiff believes Ms. Metcalf was the driving force behind the alleged discrimination, despite the fact he did not have much interaction with her.  Plaintiff contends that Dr. Gonzalez "did nothing unless [Ms.] Metcalf said something."  This allegation is untethered from evidence.  Throughout Dr. Gonzalez's tenure as head of the Togus VAMC Radiology Service, Plaintiff had no first-hand knowledge of Ms. Metcalf asking, directing, or forcing Dr. Gonzalez to take any employment action against him.  Ms. Metcalf did, however, provide Plaintiff with the workplace accommodations he requested for his physical disabilities. Although Ms. Metcalf never referenced Plaintiff's gender in undertaking employment-related actions, Plaintiff felt that she listened to female employees more than she listened to him.

Plaintiff also believes his supervisors passed him over because of his participation in EEO activity.  In 2011 and 2012, Plaintiff participated in three EEO protected activities. The first occurred in 2011 when he testified as a witness in an EEO proceeding brought by another VA employee at the Togus VMAC.  The second involved complaints of race-based or national origin-based discrimination against Dr. Gideon.  These complaints were

8

resolved with a written settlement agreement executed by Plaintiff *pro se* on June 3, 2011. Lastly, with the representation and advice of counsel, Plaintiff initiated another EEO proceeding against the VA, which he resolved with a written settlement agreement executed on May 3, 2012. Thereafter, until February 2016, Plaintiff did not participate in any further EEO proceedings or other protected activity related to his or anyone else's VA employment.

On February 8, 2016, Plaintiff contacted an EEO Counselor to express his belief that the failure to select him for the SDRT position at Togus was the result of discrimination. Those facts and circumstances drive this litigation and are, therefore, set forth in greater detail.

On October 26, 2015, an announcement for the position of SDRT first appeared on the federal government's USAJOBS website. Lisa Rifenbark, a Human Resources Specialist at Togus, authored the job announcement which included the duties associated with the position using a series of pre-approved criteria specific to the position. Ms. Rifenbark served as the administrative contact for the posting but was not involved in interviewing candidates or making the selection. She also compiled a certificate of the eligible applicants and forwarded it to Dr. Gonzalez so he could arrange interviews. When Dr. Gonzalez reviewed Ms. Rifenbark's work, he realized that Ms. Rifenbark had omitted Plaintiff from the list and instructed her to add his name. Ms. Rifenbark then reissued the certificate with Plaintiff's name included. With the addition of Plaintiff, the certificate named thirty-one eligible candidates. Ultimately, Plaintiff was one of only six candidates certified for further consideration.

Dr. Gonzalez was the selecting official for the SDRT position and sat on the interview panel because he would supervise whoever was selected for the position. Ms. Metcalf also served as an interview panelist because of her duties as Radiology Manager at Togus and because she had previously held the SDRT position. Keith Thibault[2] was the third and final interview panelist. These panelists assessed and pre-scored each applicant to determine who would receive an in-person interview.  Plaintiff and the successful applicant scored high enough to receive an interview. From that point forward, the panelists' pre-screening scores were not used for evaluative purposes. Instead, Ms. Metcalf and Mr. Thibault jointly developed rating criteria with which to question and assess the applicants during interviews. They used the VA's High-Performance Development Model to formulate a set of twelve questions to ask each applicant during their respective interviews.

The panelists conducted interviews at Togus on January 14, 2016, although Ms. Metcalf participated by telephone. They evaluated the candidates to see whether they could provide thorough, well-articulated answers demonstrating a high level of subject-matter expertise, critical thinking, and problem-solving. The panelists sought to determine whether the interviewees displayed an openness to collaboration and a willingness to reach compromises to achieve solutions, reasoning that the SDRT position would require the successful candidate to supervise a diverse group of radiology service personnel. Mr. Thibault was looking for a person who could unify the department. Dr. Gonzalez assessed

---

[2] Mr. Thibault is the Veterans Integrated Service Network 1 Imaging Service Line Program Manager at the Manchester, New Hampshire VAMC.

the candidates in terms of how comfortable they were in the back-and-forth setting of answering each interview question.

The applicants' answers were scored on a range of one to five, with five being the best.  Dr. Gonzalez, Ms. Metcalf, and Mr. Thibault did not discuss the scores the candidates would receive prior to the interviews. However, they uniformly felt that Plaintiff's answers were not as complete as those provided by the person selected for the position.  Dr. Gonzalez thought that Plaintiff was not very good on his feet and consistently failed to pick up on the nuances and range of options the panel's questions were meant to elicit.  Dr. Gonzalez also felt that Plaintiff did not display an openness to soliciting recommendations or feedback from others and did not display an interest in collaborating and seeking consensus. Similarly, Mr. Thibault found that Plaintiff's answers were myopic and neither articulate nor particularly thoughtful, whereas the candidate who was selected presented in an extremely knowledgeable light.  Mr. Thibault concluded that the selected individual did a better job conveying her personal and professional experiences in a way that would translate into effective management, including a collaborative attitude toward subordinates. The panelists described Plaintiff as nervous, whereas the selected person appeared polished and self-possessed.

The panelists scored the three applicants individually, did not consult with each other while scoring or evaluating the applicants, and were unaware of the scores each co-panelist had given the various interviewees.  For each of the twelve questions, the panelists averaged their individual scores, which were then added together to give the final score. Plaintiff received a total of 40.99 points, whereas the successful applicant received a total

of 57.58 points.  According to Dr. Gonzalez, they did not select Plaintiff because he was not the highest-scoring applicant and his overall interview performance was not the strongest.

Throughout the selection process Dr. Gonzalez's actions were not controlled or directed by either of the other panelists or anyone else. They did not consider or discuss Plaintiff's gender, disability status, or EEO participation when scoring him and never disparaged him for being disabled, male, or for having engaged in EEO activity. The panelists did not know that Plaintiff participated in EEO proceedings prior to 2016.

On January 22, 2016, Plaintiff learned he was not selected for the SDRT position. On March 15, 2016, he filed a formal EEO complaint of discrimination based on his non-selection.

## B.  DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As cautioned by the Supreme Court, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  An issue is genuine if "a reasonable jury could resolve the point in favor of the nonmoving party." *Tropigas De P.R. v. Certain Underwriters at Lloyd's London*, 637 F.3d 53, 56 (1st Cir. 2011) (internal quotations omitted). A fact is material if its "existence or nonexistence has the potential to change the outcome of the suit." *Id.* (citing *Borges ex rel. S.M.B. v. Serrano-*

*Isern*, 605 F.3d 1, 5 (1st Cir. 2010)).  To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in his favor.  *See Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999).  In its review of the summary judgment record, the court views the evidence in light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Flowers v. Fiore*, 359 F.3d 24, 29 (1st Cir. 2004).

### 1. Count One (Disability Discrimination), Count Three (Sex and Gender Discrimination), and Count Five (Disparate Treatment)

Defendant argues that the claims as they pertain to pre-2015 events are time barred pursuant to 29 C.F.R. § 1614.105(a)(1). Defendant further argues that summary should be granted on the remaining claims based on Plaintiff's failure to raise a genuine issue of material fact as to the existence of discriminatory bias in decision making or, more generally, any discriminatory hostility in the workplace.  Plaintiff counters that his pre-2015 claims are not time barred because of their continuous nature and he believes that his claims should survive summary judgment.

### a. Failure to Exhaust Administrative Remedies

A federal employee who intends to file a civil action concerning discrimination in federal employment must first initiate pre-complaint counseling with the Equal Employment Opportunity Commission (EEOC) within 45 days, or else that individual's access to judicial remedies may be barred based on the failure to exhaust administrative

remedies. *Velazquez-Rivera v. Danzig*, 234 F.3d 790, 794 (1st Cir. 2000) (citing 29 C.F.R. § 1614.105(a)(1)). The 45-day time limit may be extended if

> the individual shows that he . . . was not notified of the time limits and was not otherwise aware of them, that he . . . did not know and reasonably should not have been known that the discriminatory matter . . . occurred, that despite due diligence he . . . was prevented by circumstances beyond his . . . control from contacting the counselor within the time limits, or other reasons considered sufficient by the agency or Commission.

29 C.F.R. § 1614.105(a)(2). A plaintiff may extend the 45-day time limit if the discrimination is continuous. *Danzig*, 234 F.3d at 794. However, "even where such continuing violations are the type [courts] have recognized as tolling the limitations period, that would only excuse an untimely filing, not the failure to exhaust an administrative remedy." *Id.*

Counts 1, 3, and 5 of the Complaint allege discrimination involving Plaintiff's 2016 non-selection for the SDRT position as well as incidents as far back as April 2013.[3] The summary judgment record is clear that Plaintiff did not initiate any pre-complaint counseling with the EEOC from approximately May 2013 to January 2016. Therefore, unless there is a reason for the Court to toll the 45-day time limit required by 29 C.F.R. § 1614.105(a)(1), any pre-2016 claims must be dismissed for failure to exhaust administrative remedies.

The undisputed evidence is that Plaintiff was aware of the time limits as early as 2011 (Def.'s S.M.F. ¶¶ 96-98), which means the exceptions enumerated in 29 C.F.R. §

---

[3] Specifically, Plaintiff was passed over for MRI training in April 2013 and was not selected for an open Lead Diagnostic Radiologist position in October 2013.

1614.105(a)(2) cannot save Plaintiff's pre-2016 claims.  Plaintiff's last avenue is for the Court to determine that the "continuing violation" doctrine applies to his claims. Under this doctrine, "a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." *Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015). The doctrine does not apply to "discrete acts" of alleged discrimination that can be pin-pointed as happening on a particular day. *Id.* It only applies to claims that require repeated conduct to generate liability, such as hostile work environment claims. *Id.*  Looking at the acts in question here, the Supreme Court has been clear they are precisely the types of claims that are immediately actionable.  *See AMTRAK v. Morgan*, 536 U.S. 101, 114 (2002) (stating "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). The VA chose another employee over Plaintiff to participate in MRI training in April 2013. Plaintiff learned by April 19, 2013 that he was not chosen. This specific, isolated event renders the continuing violation doctrine inapposite. The same can be said for the VA's decision to not select Plaintiff for an open Lead Diagnostic Radiologist position in October 2013. When Plaintiff learned he was not chosen for the position, he would have been well within his rights to initiate pre-complaint counseling with the EEOC, but he did not do so. Accordingly, to the extent that Counts 1, 3, and 5 rely on pre-2016 factual allegations, summary judgment is granted.

### b. Remaining Claims under Counts 1, 3, and 5

What remains of Counts 1, 3, and 5 are Plaintiff's claims that his non-selection for the SDRT position in 2016 was the product of personal discriminatory animus based on his disability status (Count 1) and/or gender (Count 3), or else based on "disparate treatment" of disabled, male, or disabled male applicants more generally (Count 5).[4]

In a disparate treatment claim "liability depends on whether the protected trait . . . actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). *See also Teamsters v. United States*, 431 U.S. 324, 335, n. 15 (1977) ("[D]isparate treatment . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of [a protected characteristic]."). A plaintiff cannot succeed in a disparate treatment claim "unless the employee's protected trait actually played a role in [the adverse employment action] and had a determinative influence on the outcome." *Biggins*, 507 U.S. at 610. To the extent Count 5 can be regarded as a different claim than the claims advanced in Counts 1 and 3, Plaintiff has not identified evidence that Defendant imposed any employment policies or practices that served to disadvantage disabled employees/applicants, male employees/applicants, or disabled male employees/applicants.

For purposes of Counts 1, 3, and 5 Plaintiff offers no evidence that Defendant singled him out for unfair treatment because of his personal disability or gender characteristics. When, as is the case here, a plaintiff does not provide the court with direct evidence of discriminatory animus, the court applies the *McDonnell Douglas* burden-

---

[4] Plaintiff labeled Count 5 as a claim for disparate treatment, whereas he did not label Counts 1 and 3 except to explain that Count 1 alleges disability discrimination and Count 3 sex discrimination.

shifting framework. *Mancini v. City of Providence*, 909 F.3d 32, 38 (1st Cir. 2018); *Rios-Jimenez v. Sec. of Veterans Affairs*, 520 F.3d 31, 40 (1st Cir. 2008). In this framework, the plaintiff must carry the initial burden to establish a prima facie case of discrimination. *McDonnel Douglas Corp., v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff establishes his prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the action at issue. *Id.* Finally, "[o]nce the employer offers a nondiscriminatory reason for its action, the burden shifts back to the plaintiff to show that the reason proffered was a 'cover-up' for a 'discriminatory decision.'" *Feliciano de la Cruz v. El Conquistador Resort & County Club*, 218 F.3d 1, 6 (1st Cir. 2000) (quoting *McDonnell Douglas*, 411 U.S. at 802).

The preliminary prima facie burden is not an onerous one, *Lehman v. Prudential Ins. Co. of America*, 74 F.3d 323, 328 (1st Cir. 1996), and Defendant presumably for that reason concedes the issue.  Mot. for Summ. J. at 14, n.16 (ECF No. 44). The determination of this issue rests on Defendant's nondiscriminatory explanation and whether the evidence Plaintiff properly put forward might support a finding that Defendant's explanation is pretextual.  In this case, Defendant has produced nondiscriminatory reasons that I have already catalogued as to why Plaintiff was not chosen for the SDRT position. This evidence satisfies Defendant's burden under the *McDonnell Douglas* framework.

Plaintiff failed to direct me to evidence that tends to demonstrate that Defendant's proffered reasons are pretextual. In Plaintiff's Corrected Response to Defendant's Motion for Summary Judgment (ECF No. 55), Plaintiff makes a convoluted and unpersuasive argument concerning the "competitive service application method" and how "in an

application for employment veteran employees are allowed to compete for a position in accordance with the Competitive Civil Service laws." (ECF No. 55 at 11). Plaintiff goes on to say that, "[c]onsequently, as the ... [l]ist of qualified applicants was created in violation of law according cannot [sic] be used to articulate a non-discriminatory reason for Defendant's actions." *Id.* Plaintiff somehow lands on the conclusory statement that "[s]imply put, the Defendant's [non-selection of Plaintiff] is highly suggestive of discrimination, especially when Defendant admits Plaintiff was well qualified for SDRT and served in that position as Acting SDRT in an exceptional manner."[5] *Id.* at 12.

As best as I can tell, Plaintiff argues that the woman selected for the SDRT position should not have been included in the list of interviewees, despite being qualified for the position, because she should not have received enough "points" through the veteran preference system to eclipse other viable candidates who did not receive an interview. The argument is unsupported by evidence, which is the end of the analysis. The scenario also fails to support the needed inference that it was discriminatory bias toward Plaintiff's disability status or gender that resulted in his failure to be selected for the position. At best, it only supports the inference that there was another veteran candidate with disability status, who happened to be female, who management considered to be qualified for the position and deserving of an interview. Without more, it would be entirely speculative for the finder of fact to conclude that Defendant's favorable view of the successful candidate was due to

---

[5] Plaintiff failed to respond to Defendant's Statements of Material Fact and, moreover, failed to cite record evidence for the assertion that he previously served as the Acting SDRT. Therefore, Defendant's statement of material facts are deemed admitted and adopted whereas Plaintiff's unsupported statements are disregarded. D. Me. Local R. 56(f).

her sex or gender, or due to some bias related to how her disability status compared to Plaintiff's disability status. Accordingly, Plaintiff has failed to carry his burden regarding pretext. Summary judgment will enter in favor of Defendant on Plaintiff's claims of non-selection due to sex-based or disability-based discrimination under Counts 1, 3, and 5.

### 2.  Count Two (Retaliation)

At Count Two Plaintiff claims that Defendant unlawfully retaliated against him for engaging in protected activity. Complaint ¶ 38. Plaintiff believes "[t]he Defendant's failure to provide [him with] training and other employment and its benefits constitutes harassment in violation of Title VII of the Civil Rights Act of 1964." *Id.* at ¶ 39.

Title VII provides that it is unlawful for "an employer to discriminate against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). For a plaintiff to establish a prima facie case of retaliation, he must prove by a preponderance of the evidence that "(1) [he] engaged in protected conduct under Title VII; (2) [he] suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity." *Dressler v. Daniel*, 315 F.3d 75, 78 (1st Cir. 2003) (citations omitted). As to causation, the plaintiff must show that the protected activity was a but-for cause for the adverse employment action. *Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014).

The Defendant does not dispute that Plaintiff participated in protected conduct or that his non-selection would qualify as an adverse employment action if the two were related. Def.'s Mot. Summ. J. at 16-17. Whether Plaintiff has met his burden on causation

requires further analysis. Plaintiff last participated in protected activity in 2012 when he testified as a witness in an EEO proceeding in support of a colleague at Togus. Around the same time Plaintiff also accused the VA of discriminating against him personally. However, it is undisputed that the decision-makers in Plaintiff's 2016 non-selection were unaware of his protected activity. Plaintiff provides no evidence to the contrary.[6] Plaintiff does not direct me to evidence that their denials of knowledge concerning protected activity are specious or otherwise dubious. Given the evidentiary presentation, which includes an admission by dint of his failure to file a proper responsive statement of material fact, Plaintiff has failed to raise a genuine issue of fact that his engagement in protected activity influenced his non-selection. Accordingly, Defendant's Motion for Summary Judgment on Count Two is granted.

### 3.   Count Four (Harassment and Hostile Work Environment)

In Count Four, Plaintiff claims the VA's "actions against Plaintiff have created a work environment that is intimidating, hostile and offensive to the Plaintiff that would be considered hostile and offensive by a reasonable person" in violation of Title VII of the Civil Rights Act of 1964.  Complaint ¶¶ 48-49.

The Civil Rights Act prohibits employers from requiring people to work in a discriminatory, hostile or abusive environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). "When the workplace is permeated with discriminatory intimidation,

---

[6] The temporal proximity cannot save Plaintiff's claim.  Four years is simply too remote for the Court to assume the two events are related, let alone that one was a but-for cause of the other.  *See Perez v. Horizon Lines, Inc.*, 804 F.3d 1, 6 n.2 (1st Cir. 2015) (explaining that events that occurred eleven months to four years prior to an adverse employment action were too remote to support an inference of retaliation).

ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would not find hostile or abusive—is beyond Title VII's purview." *Id.*

There are six elements to a hostile work environment claim. *Roy v. Correct Care Sols., LLC*, 914 F.3d 52, 61-62 (1st Cir. 2019). For brevity's sake, I will skip ahead to whether the alleged harassing treatment in this case meets the "severe or pervasive standard" because it is dispositive. "The factors [courts] review in assessing whether harassing treatment meets the 'severe or pervasive' standard include the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered with the victim's work performance." *Ponte v. Steelcase Inc.*, 741 F.3d 310, 320 (1st Cir. 2014) (internal quotations omitted).

Plaintiff's own admissions create an uphill climb to prove his hostile work environment claim. Plaintiff admits he was never physically threatened or intimidated at work and that no alleged harassment interfered with or affected his work performance. Plaintiff has consistently received outstanding performance reviews in the workplace, and Plaintiff admits he never sought time off due to any alleged mistreatment or harassment. In terms of the severity and frequency of the supposed misconduct, Plaintiff misses the mark here as well. Plaintiff admits that once he transferred to the Lewiston CBOC he enjoyed work and his supervisors more or less left him alone. Finally, and fatal to

Plaintiff's hostile work environment claim, Plaintiff admits that from 2015 through February of 2016 no one harassed, insulted, or ridiculed him.

Plaintiff attempts to substantiate his hostile work environment claim with nothing other than the fact he was not selected for open positions and training opportunities. These circumstances do not support a finding that Plaintiff's workplace was hostile, let alone severely or pervasively hostile for the reasons that I have described. Defendant's Motion for Summary Judgment on Count Four of the Plaintiff's Complaint is granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend the Complaint (ECF No. 66) is DENIED, Plaintiff's Cross Motion for Summary Judgment (ECF No. 52) is DENIED, and Defendant's Motion for Summary Judgment is GRANTED as to all counts in the Complaint.

**SO ORDERED.**

Dated this 22nd day of December, 2020.

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE